1 **WO**

2
3
4
5
6                IN THE UNITED STATES DISTRICT COURT
7                      FOR THE DISTRICT OF ARIZONA
8
9  Barbara A. Campbell,              )   No. Civ. 04-2357-PHX-MS
                                      )
10              Plaintiff,            )   **ORDER**
                                      )
11 vs.                                )
                                      )
12                                    )
   JoAnne Barnhart, Commissioner of   )
13 the Social Security Administration,)
                                      )
14              Defendant.            )
                                      )
15 _____)

16

17      This social security disability benefits case comes before the Court on

18 Plaintiff's Motion for Summary Judgment[1] (Doc. 11) and Defendant's opposing

19 Motion for Summary Judgment (Doc. 18).  The Court now grants Plaintiff's motion

20 in part, denies Defendant's motion, and remands this matter for further proceedings.

21 **I. Procedural Background**

22      Plaintiff applied for Supplemental Security Income benefits in July, 2002,

23 alleging a disability onset date of November 1, 1997.  [Doc. 13 at 1; Doc. 4A at 56].

24 Her claims were denied initially and on reconsideration.  [Doc. 13 at 1].  Plaintiff

25 obtained a hearing before an Administrative Law Judge ("ALJ"), who issued an

26

---

[1] The full title of Plaintiff's motion is Motion for Summary Judgment on Complaint for Judicial Review of Administrative Determination on Claim for Supplemental Security Income Based on Disability.  (Doc.11).

unfavorable decision on February 26, 2004. [Id.; Doc. 4A at 16-25]. On September 1, 2004, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Social Security Commissioner for purposes of judicial review.   [Id.; Doc. 4A at 7, 13, 280-81].

Plaintiff filed a Complaint in this Court on November 18, 2002. [Doc. 1], and a Motion for Summary Judgment on October 29, 2004.  [Doc. 11].  Defendant opposed the motion and filed its Motion for Summary Judgment on May 16, 2005. [Doc. 18].

**II. Legal Framework**

**A. Standard of Review**

Because the Social Security Act confines the scope of judicial review to evidence within the administrative record, the Court will treat Plaintiff's Motion for Summary Judgment as a motion for reversal of the Commissioner's decision and Defendant's motion as a motion to affirm.  42 U.S.C. § 405(g); Higgins v. Shalala, 876 F. Supp. 1224, 1226 (D. Utah 1994)(collecting cases and discussing the appropriate treatment of summary judgment motions requesting review of administrative decisions).  The appropriate standard of review is whether the ALJ's findings of fact are supported by substantial evidence and whether the denial of benefits was free from legal error.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial evidence is "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smolen, 80 F.3d at 1279 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); accord Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  To determine whether substantial evidence exists to support an administrative decision, the Court must "review the administrative record as a whole, weighing both the evidence that supports and detracts from the [ALJ]'s conclusion." Magallanes, 881 F.2d at 750.   If  the evidence can support either affirming or reversing the ALJ's decision, the Court must uphold the decision.  Moncada v.

Chater, 60 F.3d 521, 523 (9th Cir. 1995).  However, reviewing courts cannot accept post hoc rationalizations for agency action.  See, e.g., NLRB v. Metro. Life Ins. Co., 380 U.S. 438, 444 (1965); Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001). Thus, the ALJ's decision must be upheld, if at all, on the grounds articulated in the order by the ALJ.  Pinto, 249 F.3d at 847.

### B. Regulatory Disability Standards

To qualify for disability benefits under the Social Security Act, a claimant must show that: (1) she suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and (2) the impairment renders the claimant incapable of performing work previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  The Social Security Regulations set forth a five-step sequential process for evaluating disability claims.  See 20 C.F.R. § 404.1520.  A claimant's claim of disability can be rejected at any stage of the sequential process. Id.; § 404.1520.  The claimant bears the burden of proof at steps one through four of the sequential process.  42 U.S.C. § 423(d)(5); Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998).  The burden shifts to the Commissioner at step five.  Reddick, 157 F.3d at 721.

At step one of the sequential process, the ALJ determines whether the claimant is currently engaged in substantial gainful activity.  Tackett, 180 F.3d at 1098; § 404.1520(b).  At step two, the ALJ determines, based on the medical evidence, whether the claimant has a "severe impairment."  Id.; § 404.1520(c).  If the claimant's impairment is not severe, then the claimant will not be considered disabled.  If the impairment is severe, the ALJ proceeds to step three and determines whether the impairment meets or equals a specific impairment listed in the regulations.  Id.; § 404.1520(d).  When the impairment "meets or equals" one of

the specified impairments, disability will be found. When the impairment does not meet or equal a specified impairment, the ALJ proceeds to step four and determines whether the claimant can still perform "past relevant work." Id.; § 404.1520(e). If the claimant can perform such work, the claim is denied. However, if the claimant is unable to do past relevant work, the ALJ proceeds to the fifth step and determines, based on the claimant's age, education, work experience and residual functional capacity (RFC), whether the claimant can perform other work that exists in the national economy. Id.; § 404.1520(f). If the claimant cannot, she is entitled to a finding of disability.

## III. Discussion

### A. The ALJ's Findings

At step one of the sequential evaluation process, the ALJ in this case found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date. [Doc. 4A at 24]. At step two, he found that Plaintiff suffered from the following "severe" impairments: Hepatitis C, polyarthralgias secondary to Hepatitis C, liver cirrhosis, and chronic bronchitis. [Id.]. Further, the ALJ determined that although Plaintiff was diagnosed as having panic disorder without agoraphobia, the impairment was non-severe. [Id.] At step three, the ALJ determined that Plaintiff's severe impairments were not severe enough to meet or medically equal one of the impairments specified in the regulations. [Id.]. At step four, the ALJ determined that Plaintiff's reported limitations did not prevent her from performing her past relevant work, and that she was therefore not disabled. [Id.]. Having found Plaintiff not disabled at step four of the sequential evaluation process, the ALJ did not reach step five.

In connection with assessing Plaintiff's RFC, the ALJ considered the opinions of two consultative examiners. With regard to Plaintiff's Hepatitis C, polyarthralgias secondary to Hepatitis C, liver cirrhosis, and chronic bronchitis, the ALJ relied primarily on the report of Malcolm McPhee, M.D., an examining consultative

physician. [Doc. 4A at 21-22]. The ALJ determined that the medical evidence supported a conclusion that Plaintiff suffered from each of these conditions, but did not support a conclusion that these conditions were disabling. [Id.]. Regarding Plaintiff's mental limitations, the ALJ considered the report of Daniel Watkins, a consultative examining psychologist. [Doc. 4A at 22]. The ALJ noted Dr. Watkins' diagnosis of panic disorder without agoraphobia, but observed that Plaintiff "appeared to retain the cognitive capacity to understand, remember and carry out concrete instructions of simple or moderate complexity"; "appeared capable of traveling independently, taking ordinary precautions, meeting ordinary standards of grooming and hygiene, and asking questions and requesting assistance"; and "appeared capable of remembering locations and procedures." [Id.] Ultimately, the ALJ determined that Plaintiff retained the residual functional capacity to perform "a wide/full range of light and sedentary unskilled work." [Id. at 24.]

The ALJ additionally considered Plaintiff's subjective complaints of pain, but found that her testimony was not credible. The ALJ stated the following reasons in support of this conclusion: (1) Plaintiff "reported on July 8, 2002, that her polyarthralgias were relieved with medications," (2) "she reported on July 8, 2002, that her morning hand stiffness lasted only 15 to 20 minutes and was relieved with exercise"; (3) "a doctor at Maricopa Medical Center reported she was doing well as of March 18, 2003, within 12 months of the filing date of her application"; (4) "despite her allegations of panic attacks, she had had no psychiatric hospitalizations and was not receiving psychological or psychiatric treatment"; and (5) "her activities of daily living are not those of an individual too disabled to perform substantial gainful activity." Id. at 22-23. With regard to Plaintiff's activities of daily living, the ALJ observed that Plaintiff was able to engage in a variety of activities, including: cooking, shopping, doing laundry and household chores, doing light yard work, using the telephone, talking with friends and family, caring for her personal hygiene, managing money, driving, and bike riding. Id. at 23.

The ALJ did not call a vocational expert to testify. Rather, using the Dictionary of Occupational Titles (DOT), the ALJ assessed whether Plaintiff could perform any of her past relevant work in light of the residual functional capacity he had determined. The ALJ concluded that Plaintiff could return to her past work as a motel housekeeping cleaner, both as described by the claimant and as performed in the national economy.

### B. Plaintiff's Arguments

Plaintiff now challenges the ALJ's determination on three grounds. First, she asserts that the ALJ erred in finding her mental impairments to be non-severe. Second, she argues that the ALJ erred by failing to call a vocational expert to assess the effects of her mental impairments on her ability to perform work. Finally, she asserts that the ALJ failed to provide clear and convincing reasons for discounting the severity of her symptoms. The Court will address each of Plaintiff's arguments separately below.

### 1. Severity of Plaintiff's Mental Impairments

Plaintiff first contends that the ALJ erred by finding that Plaintiff's mental impairments were non-severe under the social security regulations. [Doc. 12 at 3]. As stated previously, step two of the sequential evaluation process requires the ALJ to determine whether the claimant suffers from a severe impairment or impairments. 20 C.F.R. § 404.1520(c). Section 416.921 of the Code of Federal Regulations explains the severity requirement:

§ 416.921 What we mean by a not severe impairment(s) in an adult.

(a) Non-severe impairment(s). An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.

(b) Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include--
(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;

- 6 -

>    (4) Use of judgment;
>    (5) Responding appropriately to supervision, co-workers and usual work situations; and
>    (6) Dealing with changes in a routine work setting.

20 C.F.R. § 416.921. Social Security Ruling 85-28 further explains that an impairment will be considered "not severe" and a finding of "not disabled" made when the impairment "has no more than a minimal effect on [the claimant's] physical or mental ability(ies) to perform basic work activities." SSR 85-28, 1985 WL 56856, *3 (S.S.A. 1985); accord Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988).

Plaintiff argues that the ALJ erred in finding Plaintiff's panic disorder without agoraphobia to be non-severe because it is evident from Dr. Watkins' psychological report that Plaintiff would be significantly limited in her ability to respond appropriately to "usual work situations" as described in § 416.921(b)(5). Specifically, Plaintiff contends that the ALJ improperly failed to consider the effects workplace stress on Plaintiff and Plaintiff's ability to behave in an emotionally stable manner. Id. at 3-8. Plaintiff maintains that had the ALJ considered the entirety of Dr. Watkins' psychological report, it would have been clear that Plaintiff has serious limitations and that her mental impairments are severe. Id. Defendant counters that Plaintiff failed to satisfy her burden of proof and maintains that the ALJ's determination that Plaintiff retained the RFC to perform unskilled work was supported by logical inferences and substantial evidence. [Doc. 19 at 2-6]. Defendant further contends that the ALJ could properly reject the portion of Dr. Watkins' opinion relating to Plaintiff's alleged panic attacks because it was based on Plaintiff's self-reports, which were found not to be credible. [Id.]

The Court agrees with Plaintiff that the ALJ's assessment of Plaintiff's mental limitations did not account for the fully panoply of issues addressed by Dr. Watkins. In finding that Plaintiff's mental impairments were non-severe, the ALJ relied on Dr. Watkins' psychological report. The ALJ indicated that Plaintiff retained the cognitive ability to engage in a variety tasks, including tasks characteristic of unskilled work.

Significantly, however, the ALJ's discussion of Dr. Watkins' report left out a key determination: that Plaintiff's panic attacks without agoraphobia "may seriously limit, but not preclude, her ability to deal with stressors or to maintain emotional stability in some situations." [Doc. 4A at 110]. In assessing Plaintiff's abilities to do work-related activities on a questionnaire for the Arizona Department of Economic Security, Dr. Watkins' indicated that Plaintiff's ability to deal with work stress, ability to behave in an emotionally stable manner, and her ability to understand, remember and carry out complex job instructions were "Fair: seriously limited but not precluded." [Id. at 111-112]. In light of Dr. Watkins' opinion that Plaintiff suffered these serious limitations, it cannot be said that her mental impairments had "no more than a minimal effect" on her ability to respond appropriately to usual work situations. The Court therefore finds that Dr. Watkins' report is facially inconsistent with a finding that Plaintiff had no significant limitations that would interfere with basic work activity.

A different conclusion is not required by Defendant's argument that the ALJ reasonably rejected Dr. Watkins' assessment of Plaintiff's panic attacks and determined that Plaintiff could perform unskilled work. The threshold determination whether a particular mental impairment is severe involves a separate inquiry from the determination whether the claimant can performed unskilled work. See SSR 85-15, 1985 WL 56857, *3 (S.S.A. 1985). Moreover, there is no indication that the ALJ found any portion of Dr. Watkins' opinion unreliable because it was based on Plaintiff's self-reports. Indeed, the entirety of Dr. Watkins' report, including those portions that were expressly adopted by the ALJ, was based on Plaintiff's self-reports. Defendant's arguments are unpersuasive. See also Regennitter v. Comm'r of the Soc. Sec. Admin., 166 F.3d 1294, 1299 (9th Cir. 1999)(observing that psychologists should not be faulted for believing a claimant's complaints where there is no evidence of malingering).

Based on the foregoing, the Court finds that the ALJ erred in determining that Plaintiff's mental impairments were non-severe. Dr. Watkins' report, which was reportedly relied on by the ALJ, clearly indicated that Plaintiff had serious limitations that affected her ability to deal with workplace stresses and behave in an emotionally stable manner. The Court finds that these serious limitations would affect Plaintiff's ability to respond to usual work situations. Accordingly, Plaintiff's panic attacks without agoraphobia cannot be considered "non-severe" under the regulations. 20 C.F.R. § 416.921(b)(5).

### 2. Failure to Call a Vocational Expert

Next, Plaintiff argues that the ALJ should have called a vocational expert to assess whether Plaintiff's mental limitations precluded her from performing work existing in significant numbers in the national economy. [Doc. 12 at 10]. Plaintiff asserts that the ALJ's error in categorizing the severity of her panic attacks resulted in a secondary failure to fully consider her non-exertional limitations. The failure to consider her non-exertional limitations in turn resulted in the erroneous application of the Medical-Vocational Guidelines and failure to call a vocational expert. [Id.]. Defendant maintains that the ALJ was not required to call a vocational expert to support a decision made at step four of the sequential evaluation process. [Doc. 19 at 6].

The Medical-Vocational Guidelines present, in table form, a method for assessing whether a claimant can perform work existing in the national economy. 20 C.F.R. pt. § 404, subpt. P., app. 2; Desrosiers v. Sec'y Health and Human Servs., 180 F.3d 1094, 1101 (1988). These tables, or "grids" are designed to be used in cases involving substantially uniform levels of impairment. Id.; Tackett, 180 F.3d at 1101. In such cases, the grids may be used in lieu of obtaining evidence from a vocational expert. Id. However, the grids may be used only when they "accurately and completely describe the claimants abilities and limitations." Tackett, 180 F.3d at 1102 (quoting Jones v. Heckler, 760 F.2d 993, 990 (9th Cir. 1985); accord

1  Reddick, 157 F.3d at 729.  In cases where a claimant has non-exertional limitations
2  not contemplated by the Guidelines, the grids may be used only as a reference point
3  and a vocational expert must be called.  Id.

4        Defendant is correct that an ALJ may ordinarily rely on the Guidelines and is
5  not required to call a vocational expert when the claimant is found disabled at step
6  four, rather than step five, of the sequential evaluation process.  See Crane v.
7  Shalala, 76 F.3d 251, 254 (9th Cir. 1996)(citing 20 C.F.R. pt. § 404, subpt. P., app.
8  2); see also Bruton v. Massanari, 268 F.3d 824, (9th Cir. 2001)(observing that the
9  grids apply at step five of the evaluation process).   Nonetheless, the ALJ's
10 determination in this case was in error because the ALJ did not adequately account
11 for Plaintiff's panic attacks without agoraphobia, which amount to a non-exertional
12 mental impairment not contemplated by the Guidelines.  See, e.g., Desrosiers, 846
13 F.2d at 579 (Pregerson, J., concurring)(observing that mental limitations are non-
14 exertional limitations).  Had the ALJ done so, Plaintiff's non-exertional limitations
15 would have precluded reliance on the Guidelines alone.  Tackett, 180 F.3d at 1102.
16 Accordingly, the ALJ's failure to call a vocational expert was in error.  See Aukland
17 v. Massanari, 257 F.3d 1033, 1037 (9th Cir. 2001)(finding error where ALJ's reliance
18 on the grids presupposed a proper assessment of the claimant's disability).

19       **3. Severity of Plaintiff's Symptoms**

20       Plaintiff further argues that the ALJ's purported reasons for discrediting her
21 testimony are insufficient.  Plaintiff maintains that the ALJ failed to identify specific
22 testimony, focused primarily on Plaintiff's physical impairments, and provided
23 reasons that are legally inadequate or irrelevant.   [Doc. 12 at 11-14].   Defendant
24 asserts that the ALJ's determinations were proper and supported by the record.

25       It is within the province of the ALJ to make credibility determinations.  To
26 discredit a claimant's testimony, and ALJ must provide specific, cogent reasons
27
28

1  supported by substantial evidence. <u>Reddick</u>, 157 F.3d at 722.  Where there is no
2  affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's
3  testimony must be clear and convincing. <u>Reddick</u>, 157 F.3d at 722; <u>Lester v. Chater</u>,
4  81 F.3d 821, 834 (9th Cir.1995).  In determining whether allegations of pain support
5  a claim of disability, the ALJ may consider various factors, including: the claimant's
6  daily activities, effectiveness of pain medication, and relevant character evidence."
7  <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 346 (9th Cir. 1991); <u>see also</u> 20 C.F.R. §§
8  404.1529(c)(3), 416.929(c)(3)(listing similar factors considered by the ALJ in
9  assessing a claimant's credibility).  In addition, the ALJ must consider the claimant's
10 work record, observations of treating or examining physicians and other third parties,
11 precipitating and aggravating factors, and functional restrictions caused by the
12 claimant's symptoms. <u>Smolen</u>, 80 F.3d at 1284 (<u>citing</u> SSR 88-13); <u>Bunnell</u>, 947
13 F.2d at 346.

14      The Court agrees with Plaintiff that the ALJ erred by failing to state which
15 portions of her testimony were not credible.  Instead, the ALJ merely listed a number
16 of general reasons for rejecting Plaintiff's claims.  For example, the ALJ rejected
17 Plaintiff's testimony in part because she made reports to her doctors that the ALJ
18 deemed inconsistent with a finding of disability.  Specifically, he noted that Plaintiff
19 reported on one occasion that her "polyarthralgias were relieved with medications,"
20 and that "her morning hand stiffness lasted only 15 to 20 minutes and was relieved
21 with exercise." [Doc. 4A at 22].  On another occasion, she reported to a doctor at
22 the Maricopa Medical Center that she was "doing well." [<u>Id</u>. at 22-23].  The ALJ did
23 not go on to explain, however, how these reports established that her testimony was
24 not credible or what effect these facts would have on her disability as a whole.  As
25 Plaintiff points out, the fact that the claimant stated that she felt well on a particular
26 occasion does not establish that she did not suffer disabling limitations or that her

1  testimony was inaccurate.  See, e.g., Reddick, 157 F.3d at 724 (observing that a
2  person overstating her ailments would be unlikely to advise her doctors when she
3  was feeling better); Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001)("That
4  a person who suffers from severe panic attacks, anxiety, and depression makes
5  some improvement does not mean that the person's impairments no longer seriously
6  affect her ability to function in a workplace).

7      An ALJ's credibility findings must be sufficiently specific to allow a reviewing
8  court to conclude that the hearing officer rejected the testimony on permissible
9  grounds rather than arbitrarily discrediting it.  Rollins v. Massanari, 261 F.3d 853,
10 856 (9th Cir. 2001). The ALJ may not reject a claimant's testimony without specifically
11 identifying the portions of the testimony found not credible and explaining what
12 evidence contradicts or undermines the testimony.  Aukland, 257 F.3d at 1036 n.1;
13 Rollins, 261 F.3d at 856; Reddick, 157 F.3d at 722.  With respect to the foregoing
14 bases for rejecting Plaintiff's testimony, the ALJ failed to do so.

15     The ALJ additionally discredited Plaintiff's testimony on grounds that: (1)
16 despite reporting panic attacks, she had no record of psychiatric or psychological
17 treatment, and (2) Plaintiff's activities of daily living, as reported by Plaintiff and her
18 daughter, were inconsistent with a finding of disability.  These two reasons relate
19 more specifically to Plaintiff's testimony.  However, for the reasons that follow, the
20 Court is unpersuaded that either of these reasons is a clear and convincing reason
21 for rejecting Plaintiff's testimony.

22     First, regarding Plaintiff's failure to seek psychiatric or psychological treatment,
23 the Court observes that it is unclear whether such specialized treatment was ever
24 recommended to Plaintiff.  Plaintiff testified, however, that she did report her panic
25 attacks and anxiety in the course of her regular medical treatment, and her testimony
26 is corroborated by her primary care treatment notes.  [See Doc. 4A at 168, 176,

1  181,184, 290]. Although she testified that she was not currently taking medication
2  for her panic attacks, she explained that "they haven't figured out yet what I can take
3  because of the fact that I do have problems with my liver.... So, I do try to work
4  through them by myself. Sometimes I can, sometimes I can't. It depends on the
5  severity of it." [Doc. 4A at 22]. Plaintiff's testimony explains her treatment history,
6  and the ALJ's cursory dismissal of Plaintiff's panic attacks on grounds that she failed
7  to obtain appropriate treatment is not substantially supported.

8        Defendant offers various reasons to explain why the ALJ's statements about
9  the Plaintiff's mental health treatment history could be deemed valid. [Doc. 19 at 3-6,
10  9]. Specifically, Defendant observes that it was logical for the ALJ to infer that
11  Plaintiff's primary care doctor did not refer her to a psychotherapist because her
12  problems were not sufficiently severe. [Id.]. Defendant also asserts that there is no
13  evidence that Plaintiff's proffered reason for failing to take medication is true. [Id.].
14  Finally, Defendant asserts that anxiety disorders generally respond well to treatment,
15  and Plaintiff's disorder would therefore be controllable if she sought further
16  treatment. [Id.]. Significantly, however, the ALJ did not rely on any of these reasons
17  in his opinion. Although an ALJ may consider a claimant's failure to seek or adhere
18  to treatment plan in assessing credibility, Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.
19  1989, he has an obligation to support an adverse credibility finding with substantial
20  evidence and specific findings. Reddick, 157 F.3d at 722. In order to find a claimant
21  not-disabled for failure to follow a course of treatment without good reasons, the ALJ
22  must examine the claimant's medical conditions and personal factors to determine
23  whether the impairment is indeed remediable by such treatment and whether the
24  claimant could return to work if treated. See Byrnes v. Shalala, 60 F.3d 639, 641 (9th
25  Cir. 1995). See also Regennitter, 166 F.3d at 1299-1300 (cautioning against
26  "chastising one with a mental impairment for poor judgment in seeking
27
28  - 13 -

rehabilitation")(quoting Nguyen v. Chater, 100 F.3d , 1462, 1465 (9th Cir. 1996). The ALJ's determination in this case falls far short of meeting these standards, especially in light of the fact that Plaintiff did seek treatment from her primary care physician.

Lastly, the Court finds that the ALJ's failure to recognize the severity of Plaintiff's mental limitations appears to have impacted the ALJ's assessment of Plaintiff's activities of daily living. The Court finds the ALJ's assessment problematic because it does not appear that the ALJ fully considered whether Plaintiff's mental impairments could have been consistent with her daily activities but inconsistent with the ability to sustain work. This is exemplified by the fact that the ALJ relied primarily on Plaintiff's ability to do a variety of *physical* activities such as cooking, shopping, doing laundry and household chores, caring for personal hygiene, doing light yard work, driving, and bike riding. The fact that Plaintiff could perform such activities does not establish that she would be able to deal with work place stresses in an emotionally stable manner. The remaining activities noted by the ALJ -- using the telephone, talking with friends and family, and managing money– arguably have more direct bearing on Plaintiff's ability to work despite her mental condition. Yet, the ALJ's decision is lacking any reasoning to support a conclusion that Plaintiff's complaints were incredible despite the full range of her limitations. Although an ALJ may consider a claimant's abilities to engage in daily activities in determining credibility, Fair, 885 F.2d at 603, the level of activity is only relevant if it is inconsistent with the claimant's claimed limitations. Reddick, 157 F.3d at 722. See also Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004); Fair, 885 F.2d at 603(recognizing that "many home activities are not easily transferable to ... the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"); Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987)(noting that a disability claimant need not "vegetate in a dark room" in order to be deemed

eligible for benefits).  Here, the Court finds the ALJ's opinion lacking in reasoning that clearly and convincingly supports the ALJ's credibility determination.

For the foregoing reasons, the Court finds that the ALJ's cursory assessment of Plaintiff's testimony was inadequate to support the rejection of Plaintiff's testimony.

**C. Remand**

Having found error, this Court must determine whether to remand for further consideration or for the award of benefits.  McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002); Smolen, 80 F.3d at 1292.  An award should be directed on remand when: (1)  the ALJ failed to provide legally sufficient reasons for rejecting evidence, (2) there are no outstanding issues that must be resolved, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were the rejected evidence credited.  Smolen, 80 F.3d at 1292; see also Benecke, 379 F.3d at 593; Harman v. Apfel, 211 F.3d 1172,1178-79 (9th Cir. 2000).  However, remand for further consideration is appropriate where issues are unresolved and enhancement of the record is required.  Id.

The Court finds that, although the ALJ provided legally insufficient reasons for rejecting some of the evidence, outstanding issues must be resolved.  As a result of the erroneous categorization of Plaintiff's panic attacks without agoraphobia as a non-severe impairment, the impact of Plaintiff's non-exertional limitations on her ability to perform work was not fully explored.  As explained above, the ALJ's erroneous determination led to the failure to call a vocational expert and a failure to assess Plaintiff's disability based on the full extent of her limitations.  The ALJ's credibility assessment may also have been adversely affected as a result of the ALJ's failure to give appropriate weight to the full range of Plaintiff's limitations.

It is not clear from the record whether Plaintiff would be entitled to a finding of disability were her mental impairments properly considered, and further development of the record is required. Compare Benecke, 379 F.3d at 793-96 (demonstrating when a remand for award of benefits would be warranted). Dr. Watkins' opinion, on which Plaintiff primarily relies, itself indicates that Plaintiff retained the ability to perform a variety of tasks and was not entirely precluded from performing work-related tasks despite her panic attacks, although she was more than minimally limited in her ability to perform certain tasks. The record does not otherwise unequivocally demonstrate disability. A remand for proper assessment of Plaintiff's residual functional capacity based upon the fully array of her mental and physical impairments is warranted. See, e.g., Aukland, 257 F.3d at 1037 (remanding where Guidelines were inappropriately applied and vocational expert testimony was required); Tackett, 180 F.3d at 1104 (same).

For the reasons set forth above, this Court will grant Plaintiff's motion to the extent that Plaintiff seeks to have the ALJ's decision overturned, but denies Plaintiff's motion to the extent Plaintiff asks that an award of benefits be directed. Defendant's motion will be denied. This matter will be remanded for further proceedings consistent with the Court's opinion,

**IT IS THEREFORE ORDERED granting in part and denying in part** Plaintiff's Motion for Summary Judgment (Doc. 11).

**IT IS FURTHER ORDERED denying** Defendant's Cross-Motion for Summary Judgment (Doc. 18);

/ / /

/ / /

/ / /

/ / /

**IT IS FURTHER ORDERED remanding** this matter to the Social Security Administration for further proceedings.

DATED this 10th day of November, 2005.

_____
Morton Sitver
United States Magistrate Judge